Today is 2016-1357, ArcelorMittal v. AK Steel Mr. Shaw, please proceed when you're ready Thank you, your honor, I'm pleased to report. The district court in this case, without hearing any evidence, held claims 24 and 25 of the RE-153 reissue patent invalid. That decision should be vacated. The threshold issue is did the district court have jurisdiction to decide on the validity of those claims? And the answer is it did not. ArcelorMittal had not asserted infringement of those claims in this case. More importantly, it had provided a covenant not to sue defendants or their customers on those claims. That eliminated any possible case or controversy as to those claims. Let's put the covenant not to sue aside for just a minute because I think these are two discreetly different arguments for subject matter jurisdiction. Your first argument is they didn't assert it. But this case came up to us on appeal previously and I read the briefs and it didn't look like they were acting in those briefs consistently as though claim number 24 and 25 were at issue in the case as previously appealed and they litigated them from start to finish throughout the prior district court proceeding on appeal to us, back down, and now all of a sudden it seems like an 11th hour argument that we never asserted 24 and 25, who, what, where, no, we have no idea what you're talking about. Where did those come from? Gosh darn. That's the way it feels to me having read all the briefs. That's the way it feels to me. Let me try to change your feeling on that. First of all, so there were two prior appeals. Let's focus on the second appeal. They weren't even in existence in the first appeal. So in the second appeal, it's important to remember three cases were consolidated for the purposes of that appeal. This case and two other cases that had to do with post-trial conduct of the defendants. Claims 24, the RE 153 patent in general was two other cases. In our case, after the first remand, we had moved to amend to substitute specific claims of the RE 153 patent, 1, 2, 5, 7, and 16, which were the claims that had originally been asserted under the original patent. Those were the only claims at issue in that case. So sure, the briefs talk about all of the claims because all of the claims were at issue, defined broadly. If for no other reason than Judge Robinson on the motions for summary judgment had validated all of the claims. So claims 24, whether we asserted them in any of the cases or not, claims 24 and 25 were at issue because we needed to get that judgment as to those two claims vacated, which this court did. I know you can't waive subject matter jurisdiction, but certainly the argument didn't come up. When I read your briefs from the prior case, it seemed as though you believed those claims were in fact at issue and treated them as such in the briefing. It wasn't just a matter of we need you to vacate this particular ruling, and certainly it wasn't brought to the court's attention that these claims are not being asserted. In fact, throughout the briefing, they talk about infringement of the patent. They don't talk about the claims, and these claims are part of the patent. So when I read all of that, I think it becomes difficult for you to convince me, at least, that your client didn't acquiesce in and act as though these claims were part of the litigation, at least as of the appeal briefs to us in the last case. Your Honor, they were part of the litigation, certainly. They had been held invalid. So whether we wanted them to be part of the litigation or not, they were. They were necessarily at issue, to use the broad term, on appeal. But you spoke about infringing the patent. You didn't identify specific claims, and 24 and 25 were at issue in the litigation. I don't want you to spend the most time on your worst argument. I'd rather you spend more time on your better argument. So why don't you get to the covenant? Exactly. And it's precisely because there was... Let me ask you a question about the covenant. By its terms, it prohibits you from, your Honor, for activities and products past and present, based on RA 153. Yes. Does it also cover future actions? It does, your Honor. For claims under that patent, absolutely. It covers past and future. And we made that... I think the covenant's clear, but we also made that clear on the record multiple times. At the hearing on October 27, 2015, counsel said, we are not asserting this patent against anybody. We're dropping it. They have a free ride on this patent. So absolutely, it covered future claims. I just wanted that said here, too. It is now on the record here as well, your Honor. And Judge Moore, to get back to the covenant, it's precisely because of... Look, we could have been clearer. Suppose she did it in two separate orders. She didn't. She did it in one order. So I'm not sure which one happens first in that case. But she did it in a single order. But suppose she did it in two separate orders a day apart. The first order was the summary judgment order. So the covenant still would not have gone into effect because the covenant was conditional on the amendment of the complaint in the other case. I'm not going to remember the docket numbers. I'm sorry. Right? I'm getting the facts, though, generally, right? Generally. Sure. Close. So suppose she had not done it in a single order, but had done it in two separate orders a day apart, with the first one being summary judgment. At that point, the covenant had not taken effect. That doesn't... Well, I'll come back to the taken effect part. But I don't think it matters, your Honor. And here's why. And let me maybe lay out the timeline a little bit, because I think it's important. So the mandate in the second appeal issued on June 18, 2015. On July 28, 2015, ArcelorMittal moved to amend in the other case to drop the 153 patent and substitute in the new reissue patent. On August 4th, there was a hearing in the District Court, and that's... I don't have the page site here, but it's at the back of the appendix. There was a hearing in the District Court where counsel said, we're done with the 050 case. The only claims that were at issue in that case have been held invalid. We're not asserting that patent anymore. We want to proceed in the other case on the new patent. Then on September 4th, we moved to dismiss this case, the 050 case, on the ground that we weren't asserting any valid claims in this case. And in that motion, and this is at 4956 of the appendix, we said, although we don't think it's necessary, we are prepared to grant a covenant not to sue on this patent. I think at that point, to the extent that there was any question at all about whether the claims had been asserted, that question was resolved and there was no jurisdiction at that point. We're prepared to do this. We haven't actually done it. We're prepared to do it. Under what terms? Under what criteria? This is against the backdrop of already having said, we're not asserting this patent anymore. We're dropping it. But the... You're a mitigator. People say this crap all the time, and then they come up with a million technicalities afterwards. We're not asserting this patent anymore today, two o'clock on Tuesday. Then you go into court the next day and say, well, today's Wednesday. I mean, this is the way these things work. You hadn't signed anything. There was no document. I'm not going to try to defend... I don't think you have to have a document. Let me make a couple of points. First of all, the... You still have to grant a covenant not to sue. If the filing had said, we grant an unconditional covenant not to sue on this patent in your filing, and you had authority to say that, that would be a covenant not to sue. But that's different than saying, we will grant one if you think one's necessary. Let me make a couple of points, Judge Hughes. First of all, in the Dow Jones case, for example, there was no signed covenant. There was an offer of a covenant, and that was conditional, by the way, on Dow Jones, the defendant, dropping its invalidity counterclaims, which it refused to do. This court nonetheless held the offer of the covenant was enough to divest the court of jurisdiction. In the Benetech case... Because it was an unconditional covenant. But, Your Honor, it hadn't been signed. It hadn't been filed. But it was also... And it was not unconditional. It was conditional on Dow Jones dropping its invalidity counterclaims, which it expressly refused to do. And here, let's talk about the condition. The condition here was... The problem is, all of this was in your control. From day one, you could have signed a covenant not to sue. And then you would have been out. Correct. As Judge Robinson recognized. But you didn't do it. Well, Your Honor, we made it crystal clear that these claims were not at issue. We then said, if you have any doubt, we'll give you a covenant. Well, it's apparently not crystal clear that they weren't at issue, because we're up here and up here on the third time, whether they're actually at issue. We thought it was crystal clear. And obviously, you're right. It wasn't crystal clear to everyone. Then in the reply brief on the motion to dismiss, this was October 23rd, Appendix 5103, we renewed that and we attached a draft of the covenant. It hadn't been signed yet, but we said, and here is the covenant. Then at the hearing on October 27th, we said, we're giving them a free ride. We are not asserting these claims. And we've tendered a covenant. And counsel said, and we're getting it. Clients in Europe, they're signing it. As soon as it's signed, we'll file it with the court. Then on November 18th, it was submitted with the letter that said, and it's 5218 of the appendix. As explained at the hearing, we tender it conditioned on resolution of the motion to amend, which is obviously the core of the problem. But the condition, Your Honor, notice it wasn't conditioned on granting the motion. It was unconditional, the text of the covenant. It doesn't say it runs from the date of the granting of the resolution of the motion to amend. But why don't you just give it to him? Your Honor, and this is the height of irony. Believe it or not, we thought this would be simpler. Yeah. I mean, I think you did this so that you wouldn't have to refile the case. Right, right. And it would make it easier for the court and the like. Exactly, exactly. But is that enough to make it non-conditional? I think it is, Your Honor, because the test under the Supreme Court precedent and this court's precedent is whether under all of the circumstances, the defendant had a reasonable expectation that it could be sued on these claims. There was no way- Well, the real question is, did you have a reasonable expectation that eventually the motion to amend would be resolved? I think we did, Your Honor. But even if it didn't, even if it hung in limbo forever, first of all, we would have just gone ahead and filed a new lawsuit, which we made clear on the record on October 27th. If you want us to file a new suit, we will, but we thought this would be simpler. I don't know. I'm not comfortable with a presumption that federal courts won't eventually resolve things. Well, I am comfortable that, in particular, Judge Robinson would resolve the motion to amend, as she did in the very order that's at issue. So the test is, did they have any reasonable apprehension- Would it have made any difference if your letter, it said, conditioned upon the grant of the motion to amend? I'm glad that it didn't, because I think our argument is better, because there was no condition on this thing becoming effective or, you know, if you didn't think it was already effective, the motion was going to be resolved one way or the other. There's no question about that. The terms of the covenant were clear. It's not like it ran from the date of some action. It was forever and ever, past and future. So there was no reasonable apprehension that the defendants could have had that they would be sued on these claims. Mr. Talley, you're well into your rebuttal time, but I want to ask you a question about the merits. Judge Robinson found these claims to be obvious. She based it in large part on the prior obviousness decision, which was law of the case and binding. Claim 24, the prior obviousness decision found the claim obvious, and the only difference between Claim 24 and the rendered obvious claim is the rendered obvious claim was construed as 1500 M.P. or greater, which includes 1500 M.P. and greater, and Claim 24 says in excess of 1500 M.P. I've looked at the prior art reference at issue. It's clearly disclosed expressly. Why are you here? And let's look at Claim 25, which the only difference between the claim rendered obvious and Claim 25 is predominantly of Martensite, and when I look at the prior art reference, and it's located, let's see what page it is, on 5206, it discloses that the actual steel sheet is totally Martensite. So I don't know why the heck you're standing here and taking up all this time on these two claims, because they're clearly invalid. So why are we here? Tell me why I'm spending my morning discussing subject matter jurisdiction with you, and you're fighting me over these two claims, which have not the sliverest of hope of being held not obvious. Let me say two things. One is we're here. We didn't want to be here. We wanted to drop these claims and just move ahead with the reissue patents. And the second thing is, Your Honor, I would take issue with the fact that there's no chance that these claims are valid. It's important to note that the Patent Office reissued these claims after being... 25 only discloses, so is 24, narrower in scope, by the way, but claim 25 only discloses the material and the primary reference for obviousness, the primary embodiment, is made of that exact material, expressly disclosed. I understand, Your Honor. I hear your point, but the point is that no fact finder has ever considered that claim. Can't I take judicial notice... No, I don't think you can, Your Honor. ...of whether or not this prior art reference expressly says the word Martensite in it? You can certainly read a prior art document and see what it says, but what it would have disclosed to one of ordinary skill at the time is a question of fact. That fact has never been addressed. The PTO issued these claims despite being informed of that precise prior art, as well as this Court's prior decision, as well as the jury verdict. I hear you. I understand your point, but I disagree that these claims are clearly invalid. Then tell me about claim 24. How is claim 24 patentably distinct from that which was rendered invalid? I think the issue there, Your Honor, I think has to do with the fact that... I'm not going to argue that the scope is materially... Credibility. Go ahead. Tell me what you want to tell me. I'm going to tell you that the Patent Office issued it, notwithstanding being confronted with that prior art, and that is... In other words, you will hang your argument on the fact that the Patent Office, the infallible Patent Office issued it. No, I will hang my argument on the fact that it is a question of fact. That is an important piece of evidence, as this Court has held in other cases, that no fact finder has considered. Thank you. Mr. Seitz. Thank you, Your Honor. Christopher Seitz on behalf of the defendants. I want to take one thing about the claims asserted, but before that, I want to address your last question first. Why are we here? The reason we're here is because Arsenault lost the jury verdict. It then lost twice on appeal about infringement and obviousness, and they are desperate to avoid a final judgment, and they tend to argue. They have another reissue, which they've since gotten, which they are enforcing against defendants, and they are arguing that there is no preclusive effect from all of this prior litigation, the jury verdict, the prior decisions of this Court, because there's no final judgment. That's it. For example, 8506-87. It's like a Fresenius thing? This is Fresenius. This is an argument that to get preclusion, there has to be a final judgment. If they can moot this case, they tend to argue there's no final judgment, and that's all wiped out. In the district court's words below, they want a clean slate. Pretend no jury trial occurred, the appeals haven't occurred. What we are trying to do is get a final judgment to avoid the argument over preclusion. Let me start with whether 24 and 25 are in the case. They put it squarely in the case last time, and they did so to avoid a final judgment then. Remember how Mr. Charles just said, well, there were many cases consolidated on appeal? The case we're talking about is the 050 case. That's the remand case. This is what they said to this Court last time. This is at A5199-5200. Even if only reissue claims 24 and 25 remain, there is evidence that those claims were infringed during the time period at issue in the 050 case. They're saying claims 24 and 25, they're going to assert infringement of them in the 050 case relating back to the time frame of that case. That also means they're admitting under 252 that it relates back, that they're substantially identical. All that in that sentence. The next sentence, the proper remedy is therefore to remand the 050 case so that the district court can address infringement of reissue claims 24 and 25. I understand this argument. I think the Court does, but I think your harder argument is the covenant not to sue. Let me take that up right away. First, let's make the facts clear here on the covenant. Two things. One, the covenant was not provided until after our motion for summary judgment had been fully briefed and there was argument in it. Indeed, the first time they showed up with a covenant at all was a draft covenant attached to their reply brief and their motion to dismiss at the end of the closing briefing. That draft covenant is not even the covenant they finally came in with because it had a number of problems. They never moved. There was no briefing on that covenant. That covenant came in after, as the district court found, they weren't even contesting the lack of infringement in the trial record. Ultimately, the covenant not to sue was executed and filed with the court prior to the court's decision in validating claim 24 and 25. That's right. They have four problems, any one of which defeats the covenant. One is under already the Nike, the Supreme Court case, by the way, that postdates Dow. Therefore, it's a controlling law now. They had a burden, a formidable burden to show that it was absolutely clear that the case was moot, but they never made a motion. They never briefed the specific terms, including the conditions of that. They made no showing. They're arguing to you about the conditions. They never made that argument to the district court. They're trying to raise on appeal issues they never presented below. Why? Because that covenant was so belated. Two, the covenant was defective. Why? As they admit, and as it says in the condition, the purpose of the condition was to keep alive their other case, the 685 case, asserting the very same RE 153 claims against us. At the same time, they're saying they had no intention to assert infringement of those claims. They have a second case asserting them. They say, well, we weren't really serious about that case. We just wanted to amend. The fact remains, they said specifically in their cover letter submitting the covenant that they were not mooting that case. They're acknowledging to the district court. They're acknowledging the fact that their enforcement of RE 153 was not yet moot. So what is their condition boiled down to? Who controls? Could you assert the covenant? They, they, what they've been- Once it was signed, could you have asserted it in the other case? No, because it wasn't yet effective. It was expressly conditional. Once it was signed and it was in effect, could you have asserted it in the other case? We don't believe so because it was said specifically that didn't become effective until she acted on their motion to amend. What they were saying was- You're not listening to me. I don't believe we could have asserted it, your honor. Once I said, once it became effective, could you have asserted it in the other case? If she had not granted the motion to amend, then once it became effective, we could have asserted it, but not until then. But before she granted the motion to amend, so then that case had been amended, but that wasn't done until she'd acted on her summary judgment motion. They were done at the same time, in the exact same order. In the same order she grants the last sentence of the order. I was even perplexed because the front page of that order, even though these two cases are not consolidated, it seems to be a single order with both dockets in the front to make it clear that it was entered in both dockets. She granted the motion to amend, so the covenant went into effect right then and there. Why doesn't that move everything? Because she also granted our summary judgment motion of non-infringement and invalidity. She had jurisdiction to enter that order, and that order did both things. The order was entered when she had jurisdiction, and there's another reason, too, which is Fort James. Even if we give them, even if we got rid of the condition, and as I say, I think she had jurisdiction to enter that order, and that order invalidated under Fort James a covenant to sue after a jury trial, and when there's no reasonable apprehension of being found to infringe, it's not effective. It's not effective to deprive the court of counterclaims, and that's the Fort James case at 412 F. 3rd, 1340 at 1348. And so she had jurisdiction because by the time they gave a covenant not to sue, they'd already abandoned infringement because they'd lost. The jury had found that there was no infringement. This court had affirmed no infringement under a doctrine of equivalence, remanded on a little infringement. We briefed twice summary judgment of no literal infringement. Both times, as the district court found, they had not contested that in the trial record there was no evidence of literal infringement. So by the time the covenant came in, there was no reasonable apprehension of infringement because they had not contested how we're shown. Your view is even if they had sent you a signed unconditional covenant at the time of the summary judgment briefing, it still wouldn't be effective? Particularly if you close a briefing when it was clear, too, they weren't even contesting infringement. That's exactly Fort James. We'd invested all of this time into litigating infringement. When we've won infringement, the law is they cannot moot the case to avoid preclusion, which is exactly what they're trying to do here. They cannot moot the case by giving a covenant. The covenant is not covenanting because we don't infringe, and we've been found not to infringe. We didn't have a reasonable apprehension of being held liable for infringement in the old five years. But isn't the problem, this is all very complicated to me, but the problem with Fort James argument is there's never really been any ruling on claims 24 and 25. I mean, that's why we needed a remand in the first place. It's not a case where they're trying to say we got a jury verdict against us, but before it gets enforced or whatever, we're going to grant you a covenant not to sue. Or even we lost on claims 123, but before you enter a final judgment, we'll give you a covenant not to sue. You got a remand for further proceedings on 24 and 25. But the difference is we got a remand for the limited purposes on the infringement side of determining literal infringement on a summary judgment would be appropriate. We brief summary judgment, and they weren't contesting there was no disputed fact. That, if anything, is further along than Fort James. In Fort James, it was a jury verdict, but part of the stipulation, the covenant- When the appellant executed the covenant, no jury or court had resolved whether there was infringement of 24 and 25, right? Well, there was no judgment. There was no judgment, but nor was there a reasonable apprehension. The jury had resolved no infringement. The court had affirmed that as to a doctrine of equivalence, remanded for literal infringement. We had moved for no literal infringement. They had not contested. Their sole basis for contesting that was jurisdiction, not that there was a disputed fact in the trial record. So that was effectively resolved. In Fort James, the jury had returned a verdict, but part of what Fort James there did as part of the covenant- It seems like you're asking us to take Fort James back a further step, though. It may be a reasonable step that if you get overwhelming briefing that shows you're going to lose, you shouldn't be able to avoid that just by a covenant to sue. I'm not sure- And you're not going to argue against it. In both cases, there was no final judgment of non-infringement. It was a full jury trial, and then there was no reasonable apprehension. So that is what Fort James is talking about. Was there a reasonable apprehension in the case of being held liable? I think, if anything, the facts here are stronger. In Fort James, they promised not to do post-trial briefing to try to overturn the verdict, and there was no appeal. We were through an appeal. We had law of the case. The amount of resources and the surety was greater in our case, because in our case, we had this court's review twice, and we had the jury verdict, and we had that they had not contested that in the trial record that there was evidence of infringement. Their sole opposition to no infringement was jurisdiction. Either way, there's no risk of liability in the case. If instead, in response to your summary judgment motion, they had contested infringement and said there's still on 24 and 25, there are genuine issues, and then said, but we won't push it forward. We'll give you a covenant on that. Would it have been effective then? You'd have to look at what they were saying. That would be a harder case. I think there's an important principle in Fort James, which is the principle that this court and the Supreme Court has articulated. You can't let a litigant, particularly here a plaintiff, manipulate the court's jurisdiction to avoid preclusive effect down the road, to have a party invest in all this litigation, and be told, oh, clean slate. We start over again. I think even in that case, here, where we've been through a jury trial and two appeals, it's time for a final judgment. But that would be a closer case, in this case, where there really was no reasonable apprehension. That's exactly Fort James. There are other problems, too, including the fact we believe that in a context where not only are they trying to move this case, but they're doing it at the same time, they're asserting yet another reissue of the original patent. That's an additional factor. Remember, the validity result, the invalidity result that the court entered here, non-infringement, both of them, are relevant to the next case of the reissue because of the Kessler doctrine and other doctrines of preclusion. And both the reissue they're now asserting, RA 940, and the one at issue in this case, are reissues of the same patent. So final judgment, in this case, bears on both. It's pretty obvious that PTO thought that we misread in the prior case, which is why they did the reissue. Your Honor, I can't read the mind of the examiner as to what the examiner thought, whether it was a pure slip-up or something else. We don't know. But that was litigated. And this court held in Ars Emet-Tor II that the judgment and the decision in Ars Emet-Tor I continued, and that mandate continued in force even after the reissue. So that issue we litigated, and we have law of the case on. And why the patent office did what it did, I can't speak to what was in the mind of the And in Ars Emet-Tor II, this court, 3-0, agreed. And it remanded to the district court specifically to implement the mandate from Ars Emet-Tor I. So at this point, we had the law of the case. We had the jury verdict. We had the absence of any genuine dispute. It was too late. And it's too narrow to try to moot this case with a covenant, and then litigate yet another reissue of the original patent that gave rise to all of this jurisdiction. Your Honor, if there's no further questions. No, thank you. Mr. Trella. Thank you, Your Honor. Let me address the Fort James issue quickly. First of all, they made that argument below. Judge Robinson didn't accept it. Her hand was on the supposed condition. She said, if we had just filed it, we would have been fine. But this is not anything like Fort James. Yeah, there was a trial here. But it was a trial of different claims from a different patent. And under the wrong claim construction, that jury verdict was vacated. Claims 24 and 25 were never tried. Fort James is not a strong argument. I'm sorry, Your Honor? Fort James is not a strong argument. Don't waste your two minutes. Let me talk about the complaint about the fact that we're asserting this other reissue patent, and somehow that should make a difference on the effectiveness of the covenant. It's the covenant. The whole thing is on the conditional nature of the covenant. That's where, if you have a problem, you have it. Well, Your Honor, then let me talk about that with my minute left. There was no condition on the effectiveness of this covenant. It was. There was. There was executing the motion to amend. Deciding the motion to amend, correct. But frankly, I think even had we not issued the covenant, our prior statements on the record were enough to divest the court of jurisdiction. We said we're not asserting this. They've got a free ride on this. You cannot be much clearer than that. Because what if I think your prior assertions on the record are not enough? So it required her granting the motion to amend. If I think that was a meaningful condition. Required her resolving the motion. Yeah, yeah, yeah. I don't think. No, resolving. I think you actually conditioned it on her granting. No, no. We conditioned. Yeah, 52-18 in the appendix. It was on resolution of the motion. But why doesn't already v. Nike actually say, look, it was your obligation to come forward and establish this? I mean, this is a burden of proof question. You know, who has the burden of coming forward? We got an order where she did both simultaneously. I don't know what the heck to do with that. You know, but what I do know is if I don't know what the heck to do with somebody, who loses? The person who had the burden of proof. So tell me, given already v. Nike and the burden that was thrust upon you in that case as the person asserting the validity of the covenant, you know, what do I do with her simultaneous grant of summary judgment of non-infringement and resolution of the motion? Well, the burden in already v. Nike has to do with the adequacy of the covenant. And as the Supreme Court there made clear. What they said is you have the burden of showing there's no longer a reasonable expectation that this would be enforced against you. I believe that's pretty close to the language. And here we clearly met that standard. Our prior statements, which I know you by hypothesis were saying aren't enough, but still they're relevant. They're certainly relevant. They're relevant. And then we have the covenant saying that we are not asserting this patent against you or your customers forever and ever and ever. There was no reasonable expectation that we were going to assert these claims against these defendants or their customers. And that's the Nike v. already test. Now, the condition issue is a separate one. And there I think, again, because the supposed condition was just as a matter of administrative convenience, we'd like to proceed in the old case. You know what, that's a choice you made, though. It is a choice we made, Your Honor, but it doesn't affect the effectiveness of the covenant. Well, it might. Well, it depends on what this court decides, obviously. But I think it didn't because- I mean, you certainly had a clear path to issuing a covenant. You could sign it and you could send it to them. Which we did. And you could put no conditional language in it. Well, and the covenant itself had none. All we were asking for was, we thought, to make it more convenient and orderly to just proceed with the 685 case rather than file a new one. That obviously backfired. It was not, with hindsight, we wouldn't have done that. Because we obviously made things much more complicated. But I think there was no reasonable expectation that they would ever be sued on those claims. And that's to test. Thank you, Your Honor. Thank you. I think both counsel, the argument was very helpful.